**Affirmed and Memorandum Opinion filed April 2, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00973-CR

## CHRISTOPHER SHANE ARTZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Cause No. 14-DCR-067131**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Christopher Shane Artz of continuous sexual abuse of a young child and assessed punishment at life imprisonment. Appellant raises four issues,[1] all grounded on a single proposition: one of the predicate offenses for the charged offense occurred in Kansas, rather than Texas, and thus was improper.

---

[1] Appellant filed a pro se brief raising additional issues. We note that appellant is not entitled to hybrid representation. *See, e.g.*, *Scheanette v. State*, 144 S.W.3d 503, 505 n.2 (Tex. Crim. App. 2004). Thus, we do not address any of the issues raised in his pro se filing.

Appellant argues: (1) his trial counsel was ineffective by failing to object to the indictment and failing to object and request a mistrial when the State introduced evidence of the alleged improper predicate offense; (2) the trial court erred by failing to declare a mistrial sua sponte when some evidence, if believed, suggested that the predicate offense at issue might be improper; (3) the trial court erred by incorrectly charging the jury on the alleged improper predicate offense, causing appellant egregious harm; and (4) the State's attorneys committed prosecutorial misconduct by including the alleged improper predicate offense in the indictment and presenting evidence of the offense, purportedly to inflame the jury.

We conclude that appellant's issues are without merit or unpreserved for appellate review, and we affirm the trial court's judgment. As all issues are settled in law, we issue this memorandum opinion. Tex. R. App. P. 47.4.

**Background**

Katherine Adams,[2] appellant's daughter, was born in 2003. Katherine's parents, appellant and Cynthia, separated in 2011. Appellant moved into a home with his sister and brother-in-law, and Cynthia moved in with a co-worker, Jared Orange. Katherine and her two siblings lived with appellant during the week and spent weekends with Cynthia and Orange.

As part of a child pornography investigation, the United States Postal Service ("USPS") issued a search warrant on Orange's residence. While executing the warrant, USPS investigators discovered that multiple children, including Katherine and her siblings, spent time there. USPS investigators informed Fort Bend County Sheriff's Office Sergeant Jarett Nethery about the investigation. Nethery arranged forensic interviews for each child at the Fort Bend County Children's Assessment

---

[2] The parties refer to the complainant by this pseudonym, as do we.

Center ("CAC"). Katherine was ten years old at the time of her interview. During her interview, she denied that Orange had sexually abused her. However, she reported to the CAC's director and forensic interviewer, Fiona Remko, that her father—appellant—had sexually assaulted her multiple times. Katherine said the most recent incident occurred the previous Monday when appellant placed his mouth on Katherine's vagina and "tickled" her. Katherine told Remko that the sexual contact began when she was seven or eight years old. Katherine described numerous incidents, including an occasion during which appellant "put [his penis] up in me, like in my butt hole, and then he pulled it out and then the white stuff came out." According to Katherine, this incident occurred only once, when she was about nine years old, on a family trip in Kansas.

After Katherine's forensic interview, Nethery and another detective contacted appellant, who appeared voluntarily for an interview at the Sheriff's Office. During appellant's video-recorded interview, appellant admitted that he put his mouth on Katherine's vagina "a handful of times" or "three to four times," including "twice" at his sister's home. According to appellant, the first time occurred "maybe a couple years ago." He said the most recent incident occurred the previous week, and his description of that incident largely coincided with Katherine's. Appellant agreed that he had put his mouth on Katherine's vagina several times over a span of "about four years" at locations in Fort Bend County. He denied ever putting his penis in her anus.

A grand jury indicted appellant for the offense of "continuous sexual abuse of a young child."[3] The indictment alleged that appellant:

---

[3] Tex. Penal Code § 21.02(b). We note that despite the use of the word "continuous" in its title, this statute does not require nonstop, incessant, unbroken, or unceasing sexual abuse as use of this term would suggest.

3

in Fort Bend County, Texas, . . . between the dates of January 15, 2011 and June 17, 2014, during a period that was 30 days or more in duration, did intentionally or knowingly commit two or more acts of sexual abuse against KATHERINE ADAMS (PSEUDONYM), said acts of sexual abuse having been violations of one or more of the following penal laws, namely:

Indecency with a Child, by touching the genitals of KATHERINE ADAMS (PSEUDONYM) with the Defendant's hand or hands, with the intent to arouse and gratify the sexual desire of the defendant;

Aggravated Sexual Assault, namely, the Defendant did cause the Defendant's mouth to contact the sexual organ of KATHERINE ADAMS (PSEUDONYM);

Aggravated Sexual Assault, namely, the Defendant did cause the Defendant's sexual organ to contact the anus of KATHERINE ADAMS (PSEUDONYM),

And at the time of the commission of each of the acts of sexual abuse, the Defendant was 17 years of age or older and the child, KATHERINE ADAMS (PSEUDONYM) was a child younger than 14 years of age.

When the case went to trial, Katherine was fourteen years old and lived in Florida with her mother and two siblings. Katherine testified that she did not remember all the details she disclosed during her forensic interview. However, she recalled and recounted multiple incidents of sexual contact by appellant occurring when she was between the ages of eight and ten. These incidents all occurred in Fort Bend County and were of a similar nature, i.e., involving contact between appellant's mouth and hands, and Katherine's vagina. Consistent with Katherine's trial testimony, the jury saw appellant's video-taped interview, in which he admitted to placing his mouth on Katherine's vagina on numerous occasions. Katherine testified that she did not recall the anal-contact incident that she had reported during her forensic interview, but CAC interviewer Fiona Remko recounted Katherine's description of this event. Additionally, according to Remko's recollection of the

4

forensic interview, Katherine believed that the anal-contact incident occurred in Kansas.

After hearing the evidence and arguments of counsel, the trial court charged the jury in accordance with the indictment. The jury found appellant guilty of continuous sexual assault of a young child. Following the punishment phase of appellant's trial, the jury sentenced appellant to life in prison. The trial court signed a judgment in accordance with the jury's verdict, and this appeal timely followed.

**Introduction**

A person over the age of seventeen commits the offense of continuous sexual abuse of a young child if he or she commits two or more acts of sexual abuse— commonly referred to as "predicate offenses"—during a period that is thirty or more days in duration and the victim is younger than fourteen years of age. Tex. Penal Code § 21.02(b). An "act of sexual abuse" includes, as relevant here, aggravated sexual assault and indecency with a child.[4] *Id.* § 21.02(c)(2), (3). Jurors need not agree unanimously on which acts of sexual abuse the defendant committed, but they must agree unanimously that the defendant committed two or more acts of sexual abuse during a period of thirty days or longer. *Id.* § 21.02(d).

Appellant bases his issues on *Lee v. State*, 537 S.W.3d 924 (Tex. Crim. App. 2017), so we begin there. A jury convicted Lee of continuous sexual abuse of a child and assessed a life sentence. *See id.* at 925. On appeal, Lee challenged the evidentiary sufficiency to support his conviction. *See id.* In its indictment, the State alleged two incidences of aggravated sexual assault as predicate offenses, and the evidence at trial "showed that [Lee] committed aggravated sexual assault against his

---

[4] Aggravated sexual assault includes causing a child under fourteen's sexual organ to contact the actor's mouth or causing the actor's sexual organ to contact the child's anus. *See* Tex. Penal Code § 22.021(a)(1)(B), (2)(B).

young stepdaughter exactly twice, once in New Jersey and once in Texas." *Id.* The court of appeals affirmed Lee's conviction. *See id.* However, relying on the plain language of Penal Code section 21.02(c), the Court of Criminal Appeals held that Lee's "act in New Jersey may not be considered one of the predicate offenses necessary for a conviction under Section 21.02" because an act of sexual abuse under this section requires an act that is a violation of Texas law. *Id.* at 926. The court concluded that the evidence was therefore insufficient to support Lee's conviction for continuous sexual abuse of a child because the State proved only one predicate offense in violation of Texas law. *Id.* at 926-27. The court reformed the judgment to reflect a conviction for the lesser-included offense of aggravated sexual assault and remanded for a new punishment hearing. *Id.* at 927.

Appellant states in his brief, "All of the parties involved in the trial of this case, the trial court, the attorneys for the State, and [a]ppellant's attorney, committed harmful errors stemming from their failure to apply the holding of *Lee* to this case." We begin our analysis by addressing appellant's third issue, in which he complains of jury-charge error.

## Jury Charge

Appellant argues that the jury charge included an improper predicate offense in the application paragraph, and that the alleged error caused him egregious harm. A trial court must sua sponte submit a charge setting forth the law "applicable to the case." *Zamora v. State*, 411 S.W.3d 504, 513 (Tex. Crim. App. 2013) (citing *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998); *Almanza v. State*, 686 S.W.2d 157, 160-74 (Tex. Crim. App. 1985); Tex. Code Crim. Proc. art. 36.14 (providing that "judge shall . . . deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case")). Evaluating alleged charge errors in the criminal context involves a two-step process. We first determine whether the charge was

erroneous. *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error occurred and appellant objected to the error at trial, reversal is required if the error "is calculated to injure the rights of the defendant," which means that there is "some harm." *Almanza*, 686 S.W.2d at 171. If, as here, the defendant did not object to the error, we will reverse only if the error was so egregious and created such harm that the defendant was deprived of "a fair and impartial trial." *Barrios*, 283 S.W.3d at 350 (internal quotation omitted). Egregious harm "must be based on a finding of actual rather than theoretical harm." *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011) (citing *Ngo*, 175 S.W.3d at 750); *see also Warner v. State*, 245 S.W.3d 458, 464 (Tex. Crim. App. 2008). Jury charge errors cause egregious harm when they "affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory." *See State v. Ambrose*, 487 S.W.3d 587, 597 (Tex. Crim. App. 2016); *Cosio*, 353 S.W.3d at 777.

The charge's application paragraph stated:

[I]f you believe from the evidence beyond a reasonable doubt that the defendant, CHRISTOPHER SHANE ARTZ, between the dates of January 15, 2011 and June 17, 2014, *in Fort Bend County, Texas*, during a period that was 30 or more days in duration, committed two or more acts of sexual abuse against Katherine Adams (pseudonym), said acts of sexual abuse having been violations of one or more of the following penal laws, namely:

Indecency with a Child, by touching the genitals of Katherine Adams (pseudonym) with the defendant's hand or hands, with the intent to arouse and gratify the sexual desire of the defendant;

Aggravated Sexual Assault, by causing the defendant's mouth to contact the female sexual organ of Katherine Adams (pseudonym);

Aggravated Sexual Assault, by causing the defendant's sexual organ to contact the anus of Katherine Adams (pseudonym),

7

and at the time of the commission of each of the acts of sexual abuse, the defendant was seventeen (17) years of age or older, and Katherine Adams (pseudonym) was a child younger than fourteen (14) years of age, then you will find the defendant "Guilty" of the offense of Continuous Sexual Abuse of a Young Child, as alleged in the indictment, and so say by your verdict.

(emphasis added).

At least some trial evidence suggested that the anal-contact offense happened in Kansas rather than in Texas. Nonetheless, assuming without deciding that the alleged predicate offense of aggravated sexual assault by anal contact should not have been included in the jury charge, we cannot say that appellant was egregiously harmed.

In determining whether egregious harm is shown, we look at "1) the charge itself; 2) the state of the evidence including contested issues and the weight of the probative evidence; 3) arguments of counsel; and 4) any other relevant information revealed by the record of the trial as a whole." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); *accord Cosio*, 353 S.W.3d at 777; *Kuhn v. State*, 393 S.W.3d 519, 524-25 (Tex. App.—Austin 2013, pet. ref'd). We consider each of these factors in turn.

First, the charge instructed the jury properly that it could find appellant guilty only if "*in Fort Bend County, Texas*, during a period that was 30 or more days in duration," he committed two or more acts of sexual abuse against Katherine. The charge further advised the jury that it could, in deciding beyond a reasonable doubt whether appellant committed two or more acts of sexual abuse against Katherine in Texas, choose among three potential predicate acts of sexual abuse. Based on the structure of the charge as a whole, and the application paragraph specifically, the jury's "guilty" verdict does not compel a conclusion that the jury must have found

that appellant committed the anal contact predicate offense. The jury could have found appellant guilty if it decided that appellant committed two or more violations of the first predicate offense, two or more violations of the second predicate offense, or a combination of the first and second predicate offenses. According to the evidence, each of the first two predicate offenses occurred in Texas, assuming the jury found either or both of them occurred at all, and appellant does not argue otherwise. If the jury found appellant guilty based on any of these alternatives, then including in the charge the third predicate offense involving anal contact had no bearing on the outcome.

The charge also instructed the jury correctly that, to find appellant guilty of the offense of continuous sexual abuse of a young child, it was not required to agree unanimously on which specific acts of sexual abuse were committed by appellant or the exact dates those acts occurred. Rather, to find appellant guilty, the jury must agree unanimously that appellant committed two or more acts of sexual abuse against Katherine during a period that is thirty or more days in duration. Tex. Penal Code § 21.02(d).

Second, considering the state of the evidence and the weight of the probative evidence, it is unlikely that the jury relied on the anal-contact predicate offense as a basis for its guilty verdict. To the extent the evidence suggested that the incident of anal contact occurred in Kansas, the charge instructed the jury to consider only predicate offenses that occurred in Texas. We presume jurors follow court instructions. *See Elizondo v. State*, 487 S.W.3d 185, 208 (Tex. Crim. App. 2016); *Miles v. State*, 204 S.W.3d 822, 827-28 (Tex. Crim. App. 2006). Moreover, as discussed above, our record contains ample undisputed evidence that appellant, on multiple occasions over a period greater than thirty days, sexually assaulted Katherine by contact between his mouth and her vagina. For example, as noted

9

above, appellant admitted that he had put his mouth on Katherine's vagina a "handful of times" over the span of "[a]bout four years." Each of these incidents occurred in Texas.

Turning to the argument of counsel, the State repeated details of the anal contact allegation during closing argument. However, the State also emphasized that appellant admitted sexually abusing Katherine on numerous occasions over a period of time greater than thirty days by either touching her vagina with his hands or causing contact between his mouth and her vagina.

Finally, concerning any other relevant information revealed by the record as a whole, we note that at the start of trial the State read the indictment, which alleged that the offense was committed in Fort Bend County. Further, evidence of the alleged anal contact was independently admissible and the jury could have relied on it in finding that appellant committed one or both of the first two predicate offenses. Article 38.37 explicitly permits evidence of other offenses committed by the defendant against the victim of the offense. *See* Tex. Code Crim. Proc. art. 38.37, § 1(b) ("[E]vidence of other crimes, wrongs, or acts committed by the defendant *against the child who is the victim of the alleged offense* shall be admitted for its bearing on relevant matters, including: (1) the state of mind of the defendant and the child; and (2) the previous and subsequent relationship between the defendant and the child." (emphasis added)). Thus, the anal-contact evidence was admissible under this provision. *See id.*; *cf. also Kuhn*, 393 S.W.3d at 531 (explaining that abuse that occurred prior to statute's effective date could properly be considered as circumstantial evidence of abuse that occurred after statute's effective date, militating against finding of egregious harm related to abstract portion of jury charge that improperly permitted jury to consider pre-effective date abuse); *Martin v. State*,

10

355 S.W.3d 867, 876 (Tex. App.—Austin 2011, pet. ref'd) (same, citing Tex. Code Crim. Proc. art. 38.37).

In sum, considering the above factors, we hold that any error caused by including the third predicate offense in the charge did not egregiously harm appellant. *See Kuhn*, 393 S.W.3d at 529, 531. We overrule his third issue.

### Failure to Grant Mistrial

In his second issue, appellant contends that the trial court erred because it failed, on its own motion, to declare a mistrial when "it became clear that the indictment contained an obvious error."

A mistrial is appropriate only in extreme circumstances "for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (citing *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). Whether a mistrial is required depends on the facts of the case. *Id.* A trial court should grant a mistrial "'only when residual prejudice remains' after less drastic alternatives are explored." *Id.* at 884-85 (quoting *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. Crim. App. 2005)).

Here, because appellant did not move for mistrial,[5] we may reverse the judgment only if the trial court's failure to sua sponte grant a mistrial resulted in fundamental error, such as the deprivation of systemic rights or rights that must be affirmatively waived. *See Aldrich v. State*, 104 S.W.3d 890, 894-95 (Tex. Crim. App. 2003) ("The rules that require a timely and specific objection, motion, or complaint do not apply to two relatively small categories of errors: violations of

---

[5] *See* Tex. R. App. P. 33.1 (generally requiring that, to consider a complaint on appeal, a timely request, objection, or motion raising the complaint must be made in the trial court).

rights which are waivable only and denials of absolute systemic requirements." (internal quotations omitted)). Appellant has identified no such fundamental error.

Instead, appellant asserts that "the trial court can, and should, declare a mistrial when it discovers that the indictment is defective in such a way that there is no point in proceeding to the end of trial because a conviction would have to be reversed on appeal due to an obvious procedural error." Appellant cites no authority for this proposition, and Texas law is decidedly to the contrary. If a defendant fails to object to a defect, error, or irregularity in an indictment before the first day of trial, the defendant forfeits the right to object to any such error and may not raise that error on appeal. *See* Tex. Code Crim. Proc. art. 1.14(b); *see also Teal v. State*, 230 S.W.3d 172, 181-82 (Tex. Crim. App. 2007). In today's case, the indictment vested the district court with subject matter jurisdiction and gave appellant notice that the State intended to prosecute him for a felony offense. The indictment also alleged and thus informed appellant before trial that the predicate offenses occurred in Fort Bend County, Texas, although the proof at trial suggested that one of the predicate offenses may not have occurred in Texas. Appellant was required to object to any alleged defects in the indictment; having failed to do so, he may not on appeal raise any error based on an alleged defect in the charging instrument. *See Teal*, 230 S.W.3d at 182.

In any event, based on our discussion and disposition of appellant's challenge to the jury charge, we reject his premise that the indictment became defective during trial because some evidence suggested the third predicate offense alleged in the indictment may have occurred outside Texas. The other two predicate offenses alleged in the indictment occurred in Texas. The trial evidence did not create a scenario where "there [was] no point in proceeding to the end of trial because a

12

conviction would have to be reversed on appeal due to an obvious procedural error." The trial court had no duty to declare a mistrial under these circumstances.

Appellant has identified no fundamental error caused by the trial court's failure to sua sponte declare a mistrial in this case. *See Aldrich*, 104 S.W.3d at 894-95. We overrule appellant's second issue.

## Ineffective-Assistance-of-Counsel Claim

In his first issue, appellant asserts that his trial counsel's performance was deficient because counsel failed to object to the indictment prior to trial or request a mistrial after the State introduced evidence that the alleged third predicate offense occurred in Kansas.

We examine claims of ineffective assistance of counsel under the familiar two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Robison v. State*, 461 S.W.3d 194, 202 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). Under *Strickland*, the defendant must prove that his trial counsel's representation was deficient, and that the deficient performance was so serious that it deprived him of a fair trial. *Strickland*, 466 U.S. at 687. Counsel's representation is deficient if it falls below an objective standard of reasonableness. *Id.* at 688. But a deficient performance will deprive the defendant of a fair trial only if it prejudices the defense. *Id.* at 691-92. To demonstrate prejudice, the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffectiveness. *Id.* at 697. We conclude the prejudice element is dispositive of appellant's issue. Thus, we need only address that prong on appeal. *See My Thi Tieu v. State*, 299 S.W.3d 216, 225 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (citing *Strickland*, 466 U.S. at 697).

13

Assuming that counsel's representation fell below an objective standard of reasonableness in the particulars appellant claims, appellant has not shown a reasonable probability that, but for counsel's presumed unprofessional errors, the result of the proceeding would have been different. Appellant voluntarily confessed to all the elements necessary to support his conviction of continuous sexual abuse of a young child. During his interview with officers, appellant acknowledged that he put his mouth on Katherine's vagina on several occasions during a period of more than thirty days. This evidence alone—not even considering the other evidence presented through Katherine's trial testimony[6] and Remko's description of Katherine's outcry—was sufficient to prove appellant committed the offense of continuous sexual abuse of a young child. *See* Tex. Penal Code § 21.02; *Dwyer v. State*, 532 S.W.3d 535, 539-40 (Tex. App.—San Antonio 2017, no pet.) Thus, we are not persuaded that the outcome of the trial would have been different had appellant's trial counsel objected to the indictment before trial or moved for mistrial after the State introduced evidence that the third predicate offense occurred in Kansas. *See, e.g.*, *Strickland*, 466 U.S. at 694; *Robison*, 461 S.W.3d at 206.

Because appellant has failed to show prejudice, his claim of ineffective assistance of trial counsel fails. *See, e.g.*, *Ramirez v. State*, 422 S.W.3d 898, 903-04 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). We overrule appellant's first issue.

---

[6] Of course, Katherine's testimony concerning appellant's repeated sexual assaults involving mouth-to-vagina contact is likewise sufficient to support appellant's conviction. *See* Tex. Code Crim. Proc. art. 38.07(a); *see also, e.g.*, *Kou v. State*, 536 S.W.3d 535, 540 (Tex. App.—San Antonio 2017, pet. ref'd); *Lee v. State*, 186 S.W.3d 649, 656 (Tex. App.—Dallas 2006, pet. ref'd).

**Prosecutorial Misconduct**

In appellant's fourth and final issue, he complains that the "attorneys for the State committed prosecutorial misconduct when they persisted in presenting an indictment with an improper predicate offense and then presented evidence designed to inflame the jury."

To preserve error regarding alleged prosecutorial misconduct, an appellant must (1) object on specific grounds; (2) request an instruction to disregard any matter improperly placed before the jury; and (3) move for a mistrial. *See Penry v. State*, 903 S.W.2d 715, 764 (Tex. Crim. App. 1995); *Hajjar v. State*, 176 S.W.3d 554, 566 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). Appellant acknowledges that he made no objections on the basis of prosecutorial misconduct. However, appellant relies on cases explaining that "serious and continuing prosecutorial misconduct that undermines the reliability of the factfinding process" and results in "deprivation of fundamental fairness and due process of law" may entitle a defendant to a new trial even if "few objections have been perfected." *See Jiminez v. State*, 298 S.W.3d 203, 214 (Tex. App.—San Antonio 2009, pet. ref'd); *Rogers v. State*, 725 S.W.2d 350, 359-60 (Tex. App.—Houston [1st Dist.] 1987, no pet.).

We disagree with appellant that the instant case presents an appropriate occasion to conclude prosecutorial misconduct occurred despite appellant's failure to preserve error at trial. Appellant cites no authority that any actions taken by the prosecutor in this case rose to the level of prosecutorial misconduct. He argues that the reliability of the jury's verdict is undermined because the prosecutor proceeded to trial and presented evidence based on an indictment containing an impermissible predicate offense. As explained, however, ample evidence supports the conviction based on the other two predicate offenses in the charge, about which appellant does not complain. Appellant has not shown that, despite his failure to object to any

15

alleged prosecutorial misconduct, he is entitled to a new trial because the prosecutor's alleged conduct undermined the reliability of the factfinding process or resulted in the deprivation of fundamental fairness or due process of law.

We overrule appellant's fourth issue.

## Conclusion

We affirm the trial court's judgment.


/s/    Kevin Jewell
        Justice

Panel consists of Chief Justice Frost and Justices Jewell and Bourliot.

Do Not Publish — Tex. R. App. P. 47.2(b).